UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

UNITED STATES OF AMERICA ) Docket No. A 24-CR-031(1) RP
)
vs. ) Austin, Texas
)
FRANK RICHARD AHLGREN, III ) September 12, 2024

TRANSCRIPT OF REARRAIGNMENT/PLEA
BEFORE THE HONORABLE MARK P. LANE

APPEARANCES:

For the United States:      Mr. William R. Harris
                            Assistant U.S. Attorney
                            601 NW Loop 410, Suite 600
                            San Antonio, Texas 78216


For the Defendant:          Mr. Joshua D. Smeltzer
                            Gray, Reed & McGraw
                            Tax Controversy and Litigation
                            1601 Elm Street, Suite 4600
                            Dallas, Texas 75201


Transcriber:                Ms. Lily Iva Reznik, CRR, RMR
                            501 West 5th Street, Suite 4153
                            Austin, Texas 78701
                            (512)391-8792

Proceedings reported by digital sound recording, transcript produced by computer aided-transcription.

(Proceedings commence at 9:48 a.m.)

THE CLERK: The Court calls the following for guilty pleas: Case No. 24-CR-31, United States of America vs. Frank Richard Ahlgren; Case No. C --

THE COURT: Hold on one second. Who's my prosecutor?

MR. HARRIS: Bill Harris for the United States, your Honor. Ready to proceed with rearraignment.

THE COURT: Defense?

MR. SMELTZER: Joshua Smeltzer on behalf of Frank Ahlgren.

THE COURT: Very good.

THE CLERK: Case No. 24-CR-119, United States of America vs. Nick Anthony Rios.

MR. GARDNER: Good morning, your Honor.

Doug Gardner for the United States.

MR. ALDREDGE: And Horatio Aldredge for Mr. Rios, your Honor.

THE CLERK: Case No. CR -- I'm sorry, 24-CR-90, United States of America vs. Dadrian Duvall.

MR. GARDNER: Doug Gardner for the United States.

Good morning, your Honor.

MR. SALINAS: Good morning, your Honor.

Jesus Salinas on behalf of Mr. Duvall.

THE CLERK: Case No. 1:24-198, United States of

America vs. Ramon Angel Ahumada.

MR. GARDNER: Doug Gardner for the United States, your Honor.

MR. ALDREDGE: Horatio Aldredge for Mr. Ahumada.

THE CLERK: Case No. 1:24-CR-188, United States of America vs. Jorge Puente-Barboza.

MR. GARDNER: Doug Gardner for the United States, your Honor.

MR. SALINAS: Jesus Salinas on behalf of Mr. Puente-Barboza.

THE CLERK: Case No. 1:22-CR-165, United States of America vs. Jesus Estrada-Campuzano.

MR. GARDNER: Doug Gardner for the United States, your Honor.

MR. ALDREDGE: Horatio Aldredge for Mr. Estrada-Campuzano.

THE CLERK: Case No. 1:23-218, United States of America vs. Guadalupe Reyes-Rodriguez.

MR. GARDNER: And Doug Gardner for the United States.

MR. BOYD: Kevin Boyd, your Honor, for Mr. Reyes-Rodriguez.

THE COURT: All right. Well, thank you. And good morning to each of the attorneys and good morning to you seven men.

It's my understanding that all seven of you are here for the purpose of entering a plea this morning. If that's still what you intend to do, here in a moment, I'm going to ask that you take an oath, an oath to tell the truth. But I need to warn you, before taking this oath, that everything that you say after doing so must be truthful; otherwise, you subject yourselves to the penalties of perjury and false statements.

And as with all my questions today, I'm going to ask that you answer one at a time, starting with Mr. Ahlgren over here on my far left and continuing until we conclude with Mr. Reyes-Rodriguez at the other end. And give the man ahead of you an opportunity to answer the question before you answer, please. And then, lastly, I'd say this to you. There's obviously seven of y'all here. That means there are a lot of lawyers and a lot of people. It's important that you listen carefully to the questions I ask so that you can answer them forthrightly.

And with all of that, gentlemen, at this time, please raise your right hand and you'll be sworn by the clerk.

THE CLERK: Do you solemnly swear or affirm that the testimony in which you may give in this case now before the Court shall be the truth, the whole truth, and nothing but the truth, so help you God?

DEFENDANT AHLGREN:  Yes.

DEFENDANT RIOS:  Yes.

DEFENDANT DUVALL:  I do.

DEFENDANT AHUMADA:  Yes.

DEFENDANT PUENTE-BARBOZA:  Yes.

THE COURT:  Hold on.  This man.

DEFENDANT ESTRADA-CAMPUZANO:  Yes.

THE COURT:  And then, Mr. Reyes Rodriguez?

DEFENDANT REYES-RODRIGUEZ:  Yes.

THE INTERPRETER:  "Yes" by all three.

THE COURT:  Let's start with what I trust is an easy question.  Can you please give me your full name and your date of birth.

DEFENDANT AHLGREN:  Frank Richard Ahlgren, III, November 19th, 1968.

DEFENDANT RIOS:  Nick Anthony Rios, 10-10-81.

DEFENDANT DUVALL:  Dadrian (indiscernible) Duvall, 11-1-78.

DEFENDANT AHUMADA:  Ramon Angel Ahumada, 1-6-953.

DEFENDANT PUENTE-BARBOZA:  Jorge Puente-Barboza, August 26, 1979.

DEFENDANT ESTRADA-CAMPUZANO:  Jesus Estrada-Campuzano, February 10, 1990.

DEFENDANT REYES-RODRIGUEZ:  Guadalupe Reyes-Rodriguez, December 13, 1968.

THE COURT: Thank you, gentlemen.

In order to take your pleas this morning, I'll be asking y'all a series of questions. If I ask you a question that you don't understand, let me know that and I'll rephrase it for you because I want to ensure that you understand everything that's happening this morning.

Each of you is here with an attorney. That lawyer is here to continue to look out for your best interests. If at any point during our discussion you need time to visit with your lawyer privately, let me know this and I'll give you as much time as you need to talk to your lawyer.

Initially, in the first important issue that I need to discuss with you is the fact that each of you has the right to enter your plea in front of the district judge who's ultimately going to be responsible for determining your sentence. But if you and your lawyer believe it's appropriate, you can enter your plea in front of a magistrate judge such as myself instead.

Now, for each of you, I have a document that in the English language is entitled Consent to Administration of a Plea By a United States Magistrate Judge. It's been signed by you and your lawyer.

So my question to each of you men now is consistent with this document that you have signed and

submitted, is it your desire to enter your plea this morning in front of me rather than in front of the district judge?

DEFENDANT AHLGREN: Yes, sir.

DEFENDANT RIOS: Yes, sir.

DEFENDANT DUVALL: Yes, sir.

DEFENDANT AHUMADA: Yes, your Honor.

DEFENDANT PUENTE-BARBOZA: Yes, sir.

DEFENDANT ESTRADA-CAMPUZANO: Yes.

DEFENDANT REYES-RODRIGUEZ: Yes.

THE INTERPRETER: "Yes" by all three.

THE COURT: Very good, gentlemen. Then that's what we'll do. My next set of questions and issues will be directed towards the attorneys. Messrs. Harris and Gardner, on behalf of the United States, I don't know if this warning's been given, but in an abundance of caution, I'm going to give it to you now.

The government is obligated to provide the defense in a timely manner with any exculpatory information as that has been defined by Brady vs. Maryland and the cases that follow. Failure to provide that information in a timely manner subjects the government to a number of sanctions up to and including potential dismissal of the case.

Mr. Harris, do you understand this?

MR. HARRIS:  I do, your Honor.

THE COURT:  And, Mr. Gardner?

MR. GARDNER:  I do for all the cases.

THE COURT:  Thank you, gentlemen.

All right.  Now we're turning to the individual attorneys for each of these seven men.

Have you had sufficient time to visit with your client about the charges that they face in their case?

MR. SMELTZER:  Yes, your Honor.

THE COURT:  I guess next would be Mr. Aldredge.

MR. ALDREDGE:  Yes, your Honor.

THE COURT:  Mr. Salinas?

MR. SALINAS:  Yes to both.

THE COURT:  And, Mr. Boyd?

MR. BOYD:  Yes, your Honor.

THE COURT:  Very good.  Have you discussed with your client any defenses to the charges you believe they may have had?

MR. SMELTZER:  Yes.

THE COURT:  I have to get you --

MR. ALDREDGE:  I have, your Honor.

THE COURT:  Okay.  Hold on one second.  I need to get you near a mic somehow.

MR. SMELTZER:  Oh, sure, here.

THE COURT:  There you go.

MR. SMELTZER:  I will go here.  Yes, your Honor.

THE COURT:  Terrific.

MR. ALDREDGE:  Yes, your Honor.

MR. SALINAS:  Yes to both, your Honor.

MR. BOYD:  Yes, your Honor.

THE COURT:  And have you talked with your client about the number of important rights that they have, but rights that they'll be giving up, by entering a plea this morning?

MR. SMELTZER:  Yes, your Honor, we have.

MR. ALDREDGE:  I have, your Honor.

MR. SALINAS:  I have with both, your Honor.

MR. BOYD:  Yes, your Honor.

THE COURT:  And have you also spoken with them about the importance of the sentencing guidelines and the other factors that the district judge will consider in arriving at their eventual sentence?

MR. SMELTZER:  Yes, your Honor.

MR. ALDREDGE:  Yes, your Honor.

MR. SALINAS:  Yes, your Honor.

MR. BOYD:  Yes, your Honor.

THE COURT:  Have you -- let me see here.  Having done all of that, do you believe your client has a factual and rational understanding what they're charged with and what they're doing here this morning?

MR. SMELTZER:  Yes, your Honor.

MR. ALDREDGE:  Yes, your Honor.

MR. SALINAS:  Yes, your Honor.

MR. BOYD:  Yes, your Honor.

THE COURT:  And lastly, do you believe your client is competent to enter a plea today?

MR. SMELTZER:  Yes, your Honor.

MR. ALDREDGE:  Yes, your Honor, for all three.

MR. SALINAS:  Yes to both, your Honor.

MR. BOYD:  Yes, your Honor.

THE COURT:  All right.  Very good.

All right.  Returning to you seven men, have you had enough time to talk to your lawyer about the charges that you face in your case?

DEFENDANT AHLGREN:  Yes, your Honor.

DEFENDANT RIOS:  Yes, your Honor.

DEFENDANT DUVALL:  Yes, your Honor.

DEFENDANT AHUMADA:  Yes, your Honor.

DEFENDANT PUENTE-BARBOZA:  Yes, your Honor.

DEFENDANT ESTRADA-CAMPUZANO:  Yes, sir.

DEFENDANT REYES-RODRIGUEZ:  Yes.

THE INTERPRETER:  "Yes" by all three.

THE COURT:  Have you told your lawyer everything that you know about the facts and circumstances that gave raise to these charges and led to your arrest?

DEFENDANT AHLGREN:  Yes, your Honor.

DEFENDANT RIOS:  Yes, sir.

DEFENDANT DUVALL:  Yes, sir.

THE COURT:  Hold on one second.  Mr. Rios, you're soft-spoken.  I'm going to ask that you speak up a little bit.

DEFENDANT RIOS:  Yes, sir.

THE COURT:  Okay.  Then, Mr. Duvall?

DEFENDANT DUVALL:  Yes, sir.

DEFENDANT AHUMADA:  Yes, your Honor.

DEFENDANT PUENTE-BARBOZA:  Yes, sir.

DEFENDANT ESTRADA-CAMPUZANO:  Yes.

DEFENDANT REYES-RODRIGUEZ:  Yes.

THE INTERPRETER:  "Yes" by all three.

THE COURT:  All right.  Are you suffering this morning from any mental or physical condition?  Or are you under the influence of any drugs, alcohol, or medicine that interfere with your ability to understand my questions and what we're doing here this morning?

DEFENDANT AHLGREN:  No, your Honor.

DEFENDANT RIOS:  No, sir.

DEFENDANT DUVALL:  No, sir.

DEFENDANT AHUMADA:  No.

DEFENDANT PUENTE-BARBOZA:  No.

DEFENDANT ESTRADA-CAMPUZANO:  No.

DEFENDANT REYES-RODRIGUEZ: No.

THE INTERPRETER: "No" by all three.

THE COURT: Are you satisfied with the representation that your lawyer's provided to you in your case?

DEFENDANT AHLGREN: I am, your Honor.

DEFENDANT RIOS: Yes, I am.

DEFENDANT DUVALL: Yes, I am.

DEFENDANT AHUMADA: Yes.

DEFENDANT PUENTE-BARBOZA: Yes.

DEFENDANT ESTRADA-CAMPUZANO: Yes.

DEFENDANT REYES-RODRIGUEZ: Yes.

THE INTERPRETER: "Yes" by all three.

THE COURT: And just so there's no misunderstanding between us, do you have any complaints whatsoever about the performance of your lawyer in your defense?

DEFENDANT AHLGREN: I do not, your Honor.

DEFENDANT RIOS: No, sir.

DEFENDANT DUVALL: No, I don't.

DEFENDANT AHUMADA: No, your Honor.

DEFENDANT PUENTE-BARBOZA: No.

DEFENDANT ESTRADA-CAMPUZANO: No.

DEFENDANT REYES-RODRIGUEZ: No.

THE INTERPRETER: "No" by all three.

THE COURT: All right. My next obligation is to go over with each of you what the charge is, that is, what I understand you'll be entering a plead to here this morning. Now, in this regard, I note that looks like four of y'all have plea agreements. That's Mr. Ahlgren, Mr. Rios, Mr. Duvall, and Mr. Estrada-Campuzano.

MR. GARDNER: And Mr. Reyes-Rodriguez, your Honor, as well.

DEFENDANT REYES-RODRIGUEZ: Yes, your Honor.

MR. BOYD: Yes, your Honor.

THE COURT: And Mr. Reyes-Rodriguez. Thank you. Making it one, two, three, four, five of y'all have plea agreements. The other two of you do not have plea agreements. I want to assure the two of you without plea agreements, and that's Messrs. Ahumada and Puente-Barboza, that there's nothing wrong with that. Some cases call for plea agreements, some cases do not. But for the five of you that do have plea agreements, I have a number of questions that I need to ask each of you. So this will be -- my following questions will be directed towards Mr. Ahlgren, Rios, Duvall, Estrada and Reyes-Rodriguez.

First question is this. Your plea agreement is a lengthy document. It includes a number of very important concepts and issues. Those plea agreements have now been signed by you and are on file with the clerk's office.

So my question to you here is before you signed your plea agreement, did you read it yourself or have someone else read it to you in a language that you understand? Mr. Ahlgren?

DEFENDANT AHLGREN: I do, your Honor.

THE COURT: Mr. Rios?

DEFENDANT RIOS: Yes, sir.

THE COURT: Mr. Duvall?

DEFENDANT DUVALL: Yes, sir.

THE COURT: Mr. Estrada?

DEFENDANT ESTRADA-CAMPUZANO: Yes.

THE COURT: And, Mr. Reyes-Rodriguez?

DEFENDANT REYES-RODRIGUEZ: Yes.

THE COURT: Before you signed your plea agreement, did you review it carefully with your attorney, same five men?

DEFENDANT AHLGREN: Yes.

DEFENDANT RIOS: Yes, sir.

DEFENDANT DUVALL: Yes, I did.

DEFENDANT ESTRADA-CAMPUZANO: Yes.

DEFENDANT REYES-RODRIGUEZ: Yes.

THE INTERPRETER: "Yes" by both.

THE COURT: Before you signed your plea agreement, was your lawyer able to answer any questions that you had about the contents of that plea agreement?

DEFENDANT AHLGREN:  Yes, your Honor.

DEFENDANT RIOS:  Yes, sir.

DEFENDANT DUVALL:  Yes, he did.

DEFENDANT ESTRADA-CAMPUZANO:  Yes.

DEFENDANT REYES-RODRIGUEZ:  Yes.

THE INTERPRETER:  "Yes" by both.

THE COURT:  Reminding you that you're under oath then, are you telling me that you understand your plea agreement?

DEFENDANT AHLGREN:  I am, your Honor.

DEFENDANT RIOS:  Yes, sir.

DEFENDANT DUVALL:  I do.

DEFENDANT ESTRADA-CAMPUZANO:  Yes.

DEFENDANT REYES-RODRIGUEZ:  Yes.

THE INTERPRETER:  "Yes" by both.

THE COURT:  Do you agree to follow that plea agreement and be bound by it in the future?

DEFENDANT AHLGREN:  I do, your Honor.

DEFENDANT RIOS:  Yes, sir.

DEFENDANT DUVALL:  Yes, sir.

DEFENDANT ESTRADA-CAMPUZANO:  Yes.

DEFENDANT REYES-RODRIGUEZ:  Yes.

THE INTERPRETER:  "Yes" by both.

THE COURT:  And for the five of you with plea agreements, I am not going to read those documents to you

now; instead, I'm going to take you at your Word that you understand your plea agreement. However, there are a couple of issues that I need to address in each of your plea agreements. The first issue is common to all five of your plea agreements and it's this. If the district judge accepts your guilty plea and sentences you pursuant to your plea agreement, you'll be waiving and giving up your right to an appeal in your case.

Do you understand the significance of this?

DEFENDANT AHLGREN: I do, your Honor.

DEFENDANT RIOS: Yes, sir.

DEFENDANT DUVALL: I do.

DEFENDANT ESTRADA-CAMPUZANO: Yes.

DEFENDANT REYES-RODRIGUEZ: Yes.

THE INTERPRETER: "Yes" by both.

THE COURT: And just to elaborate briefly, it means that you're giving up the right to complain about any aspect of your conviction or your sentence on either a direct appeal or later on when you're serving your sentence. In either instance, if the judge accepts this plea agreement, you're giving up the right to complain about any aspect of your conviction or your sentence.

Do you men understand this, as well?

DEFENDANT AHLGREN: I do, your Honor.

DEFENDANT RIOS: Yes, sir.

DEFENDANT DUVALL:  I do.

DEFENDANT ESTRADA-CAMPUZANO:  Yes.

DEFENDANT REYES-RODRIGUEZ:  Yes.

THE INTERPRETER:  "Yes" by both.

THE COURT:  Okay.  Then taking up these plea agreements one at a time, Mr. Ahlgren, your agreement includes an important recommendation -- or that the government is going to make as it relates to a number of issues that relate to sentencing in your case.  These issues are -- start on page 7 and basically, it's this. The government and you agree that the applicable offense guideline is Section 2T1.1 of the sentencing guidelines. That the base offense level is a level 20 because the loss is more than 550,000, but less than 1.5 million.  And lastly, the government has conceded that it will not seek any additional sentencing enhancements except the government does reserve the right to argue for a two-level enhancement or sophisticated means being employed in relation to the criminal conduct in your case.

Do you understand these agreements with the government?

DEFENDANT AHLGREN:  I do, your Honor.

THE COURT:  Okay.  And I'm more concerned about what you're giving up or conceding as opposed to what the government's going to do because they're going to do it.

But as it relates to those agreements, do you understand and appreciate that the district judge will in my experience strongly consider these types of agreements but the district judge is not bound by those agreements? Do you understand this?

DEFENDANT AHLGREN: I do understand that, your Honor.

THE COURT: There's also a number of financial obligations that are set out on pages 8, 9 and 10 as it relates to the payment of restitution and tax obligations in your case.

Do you understand and appreciate those continuing obligations as described in the plea agreement?

DEFENDANT AHLGREN: I do, your Honor.

THE COURT: Sir, what's your last name again?

MR. SMELTZER: It's Smeltzer.

THE COURT: Smeltzer. I'm sorry. I have it written, I can't even read my handwriting.

Mr. Smeltzer, is there anything else about the plea agreement that you'd like me to address?

MR. SMELTZER: I -- no, your Honor.

THE COURT: Mr. Harris?

MR. HARRIS: I believe that covers it, your Honor.

THE COURT: All right. Thank you, gentlemen.

All right. Now, turning to your situation, Mr. Rios, your plea agreement also includes some important language on pages 5 and 6 as it relates to the forfeiture of $11,564 more or less in U.S. currency.

Do you understand that after sentencing, you'll be forever giving up any right, title and interest you have in that money?

DEFENDANT RIOS: Yes, sir.

THE COURT: Mr. Aldredge, anything else about the plea agreement?

MR. ALDREDGE: There's an agreed recommendation of 120 months, your Honor.

THE COURT: Where is it?

MR. GARDNER: On page 3, your Honor, recommendation to the Court, paragraph 5.

THE COURT: You know, the government buries these things in different portions of -- every single AUSA buries it in a different portion of the plea agreement.

MR. GARDNER: Which I agree with you, your Honor, we should have a standardized -- we do have a standardized plea agreement. I would represent to the Court mine is part of the standardized plea agreement.

THE COURT: There we go.

MR. GARDNER: I agree with the Court. They are in different locations. It's 120-month recommendation,

your Honor. It's a recommendation only.

THE COURT: Well, I didn't see it so I apologize.

Mr. Rios, I kind of need to go over the same thing I just did with Mr. Ahlgren. In my experience, the judge will strongly consider that agreement that you've entered into with the prosecutors, but the judge isn't bound by it. The judge could conduct an investigation and find that you should be held to account for more time than that, more than 120 months, and you can't -- you don't have -- you might have a complaint about it but the judge certainly won't be in violation of the plea agreement.

Do you understand that?

DEFENDANT RIOS: Yes, sir.

MR. ALDREDGE: He understands that, your Honor (indiscernible) points already.

THE COURT: Did it?

MR. ALDREDGE: In federal court.

THE COURT: Who was the sentencing judge if I might add?

MR. ALDREDGE: Judge Yeakel.

THE COURT: Very good. Okay. All right. Thank you both for pointing that out.

Mr. Gardner, Mr. Aldredge, anything else about the plea agreement?

MR. GARDNER: Not in that case, your Honor. Just

a heads up, your Honor, to the Court's point for the next three gentlemen, the plea agreements for Mr. Duvall, Mr. Campuzano and Mr. Reyes-Rodriguez, they all have sentencing recommendations.

THE COURT: Well, times have changed, haven't they?

MR. GARDNER: Yes, they have, your Honor.

THE COURT: Okay. Thank you.

And moving on to your situation, Mr. Duvall, like the other two gentlemen and what the prosecutor just alluded to, there's an important recommendation that starts on page 2 of your plea agreement, but continues to page 3, and it is an agreement that the Court impose a sentence of 46 months in federal prison.

Do you understand that agreement?

DEFENDANT DUVALL: Yes, sir, I do.

THE COURT: Like I told the other men, the judge will strongly consider that but he's not bound by it. He could find and hold you accountable if after an investigation, it proves it's require -- or necessary, the judge could sentence you to a sentence above 46 months imprisonment.

Do you understand that possibility?

DEFENDANT DUVALL: Yes, sir.

THE COURT: Okay. Same drill, gentlemen. Mr.

Salinas, Mr. Gardner, anything else you want me to address?

MR. SALINAS: Your Honor, I think the joint agreement also calls for three years of supervised release. That's part of the language as well as forfeiture of the firearm involved, but I think that's part of the agreement, as well. Nothing else.

MR. GARDNER: No, your Honor.

THE COURT: Yeah. And so, Mr. Duvall, Mr. Salinas is right. The agreement does contemplate that you all are going to represent to the sentencing judge that 46 months plus three years of supervised release is the appropriate sentence.

Do you understand this?

DEFENDANT DUVALL: Yes, sir, I do.

THE COURT: And Mr. Salinas has also reminded me that, importantly, on page 7 is an obligation on your part to forfeit any right, title and interest you may have in the Beretta PX4 Storm, nine-millimeter pistol that was involved in this offense.

Do you understand this?

DEFENDANT DUVALL: Yes, sir, I do.

THE COURT: Okay. Mr. Estrada.

DEFENDANT ESTRADA-CAMPUZANO: Yes.

THE COURT: Your plea agreement on page 1

includes a representation that the United States, meaning the prosecutors, agree that a sentence of 48 months consecutive to any other criminal sentence you may be required to serve is an appropriate sentence in your case.

Do you understand this?

DEFENDANT ESTRADA-CAMPUZANO:  Yes, I understand.

THE COURT:  Again, the judge is not bound by that.  He could find you accountable for more than 48 months and the judge has not violated your plea agreement.

Do you understand that possibility?

DEFENDANT ESTRADA-CAMPUZANO:  Yes.

THE COURT:  All right.  Messrs. Aldredge and Gardner, anything else?

MR. GARDNER:  Nothing from the government, your Honor.

MR. ALDREDGE:  No, your Honor.

THE COURT:  Mr. Reyes-Rodriguez, your plea agreement on page 3 includes a specific recommendation that the -- let's see, both you and the government are going to represent to the sentencing judge that a sentence of 60 months in federal prison is appropriate in your case.

Do you understand this?

DEFENDANT REYES-RODRIGUEZ:  Yes.

THE COURT:  But like the other men that I've

talked with, the judge is not bound by that sentencing recommendation. If the judge finds that a sentencing that's higher than 60 months is appropriate, the judge can do that and the judge will not be in violation of your plea agreement.

Do you understand this?

DEFENDANT REYES-RODRIGUEZ: Yes.

THE COURT: In addition to that, on pages 6, 7 and 8 of the plea agreement is an obligation on your part to forfeit your right, title and interest in a rifle, pistol, and a revolver, and any related ammunition and accessories that are described within the plea agreement. In addition to that, you'll be forever forfeiting your right, title and interest in the following real property: Property at 5704 Melody Lane, Austin, Texas 78724-8559.

Do you understand that you'll be forever forfeiting your right, title and interest in all of that property that's specifically described within your plea agreement at the conclusion of your sentencing hearing?

MR. BOYD: Your Honor, I'll just -- his portion of it. It's an Omero (phonetic) property.

THE COURT: Okay. That's good. But you'll be forfeiting your right, title and interest in the home -- I trust it's a home but that's not important. You'll be forfeiting your right, title and interest that you have in

the property on Melody Lane as well as the firearms I've described.

Do you understand this?

DEFENDANT REYES-RODRIGUEZ: Yes.

THE COURT: Okay. Mr. Boyd, and, Mr. Gardner, anything else about the plea agreements?

MR. GARDNER: Nothing from the government.

MR. BOYD: Nothing from the defense, your Honor.

THE COURT: All right. Thank you, gentlemen.

All right. Now, my next obligation is to specifically go over with each of you what I understand you're going to be entering a guilty plea here to today and, again, I need to do this one at a time. Starting with you, Mr. Ahlgren.

Mr. Ahlgren, you've been charged by indictment and the plea agreement contemplates the entry of a guilty plea on your part to Count 1 of that indictment. Is that your understanding?

DEFENDANT AHLGREN: That's correct, sir.

THE COURT: That charge in Count 1 is loosely described as filing a false tax return and is as follows. That on or about October 23rd, 2017, you sold approximately 640 Bitcoins worth a total of approximately $3.7 million and that you had used to purchase a house in Park City, Utah. That on or about April 5th of 2018, in

the Western District of Texas, you willfully made and subscribed a false U.S. Individual Income Tax Return Form 1040 for the calendar year 2017, which was verified by a written declaration that it was made under the penalties of perjury and which the defendant, meaning you, did not believe to be true and correct as to every material matter. The tax return which was filed with the Internal Revenue Service was false as to a material matter in that, amongst other things, it reported on line 13, a capital gain of $21,167 whereas you knew you had capital gains in excess of that amount.

Similarly, that you reported on IRS Form 8949 sales and other dispositions of capital assets, part one, short-term, line one, short-term transactions in Bitcoin with a cost basis of $3,021,492 whereas you knew that you had a cost basis less than that amount. And lastly, in this regard that you reported falsely on an IRS Form 8949 sales and other dispositions of capital assets part two, long-term, line two, long-term transactions in Bitcoin with a gain of $510,752 whereas you knew you had a long-term gains in excess of that amount.

Again, do you understand that charge, sir?

DEFENDANT AHLGREN: I do, your Honor.

THE COURT: Mr. Ahlgren, if you plead guilty to that charge today, you'll be subjecting yourself to the

following statutory range of punishment: A term in federal prison of not more than three years to be followed by a supervised release term of not more than one year, a fine that could be as high as $100,000, or twice the value of the property involved, which in this case, Mr. Harris.

MR. HARRIS: Actually, it's $250,000 maximum fine.

THE COURT: Okay.

MR. HARRIS: Plus or, as you indicated, twice the value of the property involved in the transaction, which is the gain on the Bitcoin for that three-point-million-dollar purchase.

THE COURT: All right. So just give me a ballpark.

MR. HARRIS: I was afraid you were going to ask me that, your Honor. Bear with me. I'm reading this chart correctly, that would be roughly $1 million.

THE COURT: All right. So twice could be up to $2 million and a fine.

MR. HARRIS: Correct.

THE COURT: So Mr. Harris believes the statutory fine amount is $250,000, but that's really trumped by the fact that the amount of -- I should say, the amount of the difference between the cost basis you claim versus what it really was was at least a million dollars. Could be

higher.

Do you understand that?

DEFENDANT AHLGREN:  I do understand that.

THE COURT:  All right.  And then, not to mention a $100 mandatory special assessment and a continuing obligation on your part to pay restitution as it relates to both the count of conviction, which is Count 1, but as the plea agreement makes clear, that restitution obligation extends to any relevant conduct, as well.

Do you understand this?

DEFENDANT AHLGREN:  I do understand that, your Honor.

THE COURT:  All right.  Thank you.

Mr. Rios, your plea agreement contemplates the entry of a guilty plea to Count 1 of your indictment.

Have you read and reviewed that carefully with your lawyer before coming to court?

DEFENDANT RIOS:  Yes.

THE COURT:  Then you know that it charges on or about May 7, 2024, in the Western District of Texas, that you did intentionally and knowingly possess with intent to distribute 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, 100 grams or more of a mixture

and substance containing a detectable amount of heroin, and 28 grams or more of a mixture and substance containing a detectable amount of crack cocaine, and a mixture and substance containing a detectable amount of cocaine, all in violation of Schedules I or II of the Controlled Substance Substances Act.

Do you understand that charge, sir?

DEFENDANT RIOS: Yes, sir.

THE COURT: If you plead guilty to that charge, you'll be subjecting yourself to the following statutory range of punishment: A term in federal prison of not more than 10 years to be followed by a supervised release term of at least three years, but it could be up to the rest of your lifetime, a fine as high as $1 million, a $100 mandatory special assessment, and the forfeiture issues that we talked about earlier.

Do you understand this?

DEFENDANT RIOS: Yes, sir.

THE COURT: Mr. Duvall.

DEFENDANT DUVALL: Yes, sir.

THE COURT: The plea agreement contemplates the entry of a guilty plea on your part to Count 2 of the indictment. And again, have you reviewed that charge carefully with your lawyer before coming to court?

DEFENDANT DUVALL: I have, sir.

THE COURT:  Then you know that it charges on or about July 10, 2023, in the Western District of Texas, knowing that you had been convicted of a crime, punishable by imprisonment for a term exceeding one year, that you did knowingly and unlawfully possess in and affecting commerce a firearm, namely, a Beretta PX4, nine-millimeter pistol, which had been shipped and transported in interstate and foreign commerce all in violation of federal law.

Do you understand that charge, sir?

DEFENDANT DUVALL:  Yes, sir.

THE COURT:  If you plead guilty to that charge, you'll be subjecting yourself to the following statutory range of punishment:  A term in federal prison of not more than 15 years to be followed by a supervised release term of not more than three years, a fine as high as $250,000, a $100 mandatory special assessment, and the forfeiture of the firearm as we described earlier.

Do you understand this, Mr. Duvall?

DEFENDANT DUVALL:  Yes, sir, I do.

THE COURT:  Mr. Rios, you've been in -- well, let's see.  No, not Mr. Rios.  I'm sorry.

Mr. Ahumada, am I saying that right?

DEFENDANT AHUMADA:  Ahumada.

THE COURT:  Ahumada.  Mr. Ahumada, and, Mr.

Puente, you men have both been charged with illegally reentering the United States after previously being deported and removed. In both of your cases, you've been charged as follows:

On or about a date in 2024, in the Western District of Texas, that you and your status as an alien that you were found in the United States after having been denied admission, excluded, deported, and removed therefrom on or about a prior date and that you had not obtained consent to reapply for admission from the Attorney General of the United States or his successor, the Secretary of Homeland Security, all in violation of federal law.

Mr. Ahumada, your information specifically notes that you were found on August 9th, 2024 and previously deported or removed on March 4th, 2020.

Mr. Ahumada, do you understand what you're charged with?

DEFENDANT AHUMADA: Yes, your Honor.

THE COURT: Mr. Puente, the indictment in your case notes that you were found on June 28th, 2024 and previously deported or removed on March 6, 2023.

Mr. Puente, do you understand what you're charged with in Count 1 of your indictment?

DEFENDANT PUENTE-BARBOZA: Yes, sir.

THE COURT: Messrs. Ahumada and Puente, if you men do plead guilty to your charge, you'll be subjecting yourself to the following statutory range of punishment: A term in federal prison of not more than 20 years to be followed by a supervised release term of up to three years, a fine that could be as high as $250,000, and a $100 mandatory special assessment.

Do you men understand the statutory range of punishment that you face in your case? Mr. Ahumada?

DEFENDANT AHUMADA: Yes, your Honor.

THE COURT: And, Mr. Puente?

DEFENDANT PUENTE-BARBOZA: Yes, sir.

THE COURT: Turning to Mr. Estrada, your plea agreement contemplates the entry of a guilty plea to Count 1 of a superseding information that's been filed in your case.

Have you read that charge carefully with Mr. Aldredge before coming to court?

DEFENDANT ESTRADA-CAMPUZANO: Yes.

THE COURT: Then you know that it charges beginning in or around May of 2022, and continuing until on or about January 24th, 2024, in the Western District of Texas, that you did knowingly, unlawfully and willfully combine, conspire, confederate, and agree with each other and others, both known and unknown, to possess with intent

to distribute and to distribute a mixture and substance containing a detectable amount of cocaine, a mixture and substance containing a detectable amount of heroin, a mixture and substance containing a detectable amount of methamphetamine, all in violation of federal law.

Do you men -- I mean, do you understand that charge, sir?

DEFENDANT ESTRADA-CAMPUZANO: Yes.

THE COURT: Mr. Estrada, if you plead guilty to that charge, you'll be subjecting yourself to the following statutory range of punishment: A term in federal prison of not more than 20 years. It will be followed by a supervised release term of at least three years, but it could be up to the rest of your lifetime, a fine as high as $1 million, a $100 mandatory special assessment, and the forfeiture of the property that we talked about earlier.

Do you understand this?

DEFENDANT ESTRADA-CAMPUZANO: Yes.

THE COURT: And then, Mr. Reyes-Rodriguez, your plea agreement contemplates the entry of a guilty plea to Count 1 of a superseding information.

Have you read that charge carefully with Mr. Boyd before coming to court today?

DEFENDANT REYES-RODRIGUEZ: Yes.

THE COURT: And you know that it charges beginning in or around May of 2022, and continuing until on or about January 24th, 2024, in the Western District of Texas, that you did knowingly, unlawfully and willfully combine, conspire, confederate, and agree with each other and others, both known and unknown, to possess with intent to distribute and to distribute a mixture and substance containing a detectable amount of cocaine, a mixture and substance containing a detectable amount of heroin, and a mixture and substance containing a detectable amount of methamphetamine, all in violation of federal law.

Again, do you understand that charge, sir?

DEFENDANT REYES-RODRIGUEZ: Yes.

THE COURT: If you do plead guilty to the charge today, you'll be subjecting yourself to the following statutory range of punishment: A term in federal prison of not more than 20 years to be followed by a supervised release term of at least three years, but it could be up to the rest of your lifetime, a fine as high as $1 million, a $100 mandatory special assessment, and the forfeiture of the property that we talked about earlier.

Mr. Reyes, do you understand if you plead guilty to this charge, that's what your statutory range of punishment will be?

DEFENDANT REYES-RODRIGUEZ: Yes.

THE COURT: All right. Messrs. Ahumada, Estrada and Reyes-Rodriguez, the charge in your case and that we talked to earlier is memorialized in something called an information. It simply means that in your three cases, the federal prosecutors sworn out the charge against you. There's nothing wrong with this. The law provides for it and it happens all the time. But you to have the right to have the charge that's described in this information presented to a federal grand jury for an independent determination as to whether or not there's probable cause and that an indictment is appropriate. But if you and your lawyer believe it's appropriate, you can proceed instead on the basis of a charge set out in an information.

Now, for the three of you, I have a document that in the English language is entitled Waiver of Indictment that allows us to proceed on this basis this morning.

So my question to you now is, consistent with the Waiver of Indictment document that you have signed and submitted, is it your desire to enter your plea to the information this morning rather than by grand jury indictment? Mr. Ahumada?

DEFENDANT AHUMADA: Yes, your Honor.

THE COURT: Mr. Estrada?

DEFENDANT ESTRADA-CAMPUZANO: Yes, I understand.

THE COURT: And, Mr. Reyes?

DEFENDANT REYES-RODRIGUEZ: Yes.

THE COURT: All right, gentlemen. Then that's what we'll do.

All right. In all seven of your cases, I mentioned that you're facing a term of supervised release and I want to briefly explain to you what it means. It means the day you're released from federal prison, you'll begin a term of supervised release, and while you're technically no longer in custody, you will be required to comply with a number of conditions that will be explained to you by the district judge at the time of your sentencing hearing.

Importantly, if you violate any of those conditions, that term of supervised release can be revoked and you can be sent back to federal prison without any credit for any time you may have served in prison before the supervised release term began.

So do you seven men understand that you face a term of supervised release and what can and probably will happen if you violate any of those conditions?

DEFENDANT AHLGREN: I do, your Honor.

DEFENDANT RIOS: Yes, sir.

DEFENDANT DUVALL: I do.

DEFENDANT AHUMADA: Yes, your Honor.

DEFENDANT PUENTE-BARBOZA:  Yes, sir.

DEFENDANT ESTRADA-CAMPUZANO:  Yes.

DEFENDANT REYES-RODRIGUEZ:  Yes.

THE INTERPRETER:  "Yes" by all three.

THE COURT:  Are you a U.S. citizen?

DEFENDANT AHLGREN:  I am, your Honor.

DEFENDANT RIOS:  Yes, sir.

DEFENDANT DUVALL:  Yes, sir.

DEFENDANT AHUMADA:  I'm not.

DEFENDANT PUENTE-BARBOZA:  No.

DEFENDANT ESTRADA-CAMPUZANO:  No.

DEFENDANT REYES-RODRIGUEZ:  Resident.

THE INTERPRETER:  "No" by all three and "resident" by Mr. Reyes-Rodriguez.

THE COURT:  Okay.  Well, for those of you who are not U.S. citizens but including you, Mr. Reyes, in your status as a legal resident, you need to know going into this process that among the many conditions you'll be required to comply with will be specific instructions to you that if you are deported and removed from the United States after you complete your prison sentence that you not come back to this country unlawfully thereafter because if you're to do that, that term of supervised release could be revoked and you could be sent back to prison.

But to be clear, you could be charged again with a new crime called illegal reentry, meaning if you come back to this country unlawfully while you're on supervised release, you could be subjected to two criminal justice punishments and those punishments can be stacked on top of each other for more and more time in federal prison.

Do you four men, starting with Mr. Ahumada, understand what I just shared with you?

DEFENDANT AHUMADA: Yes, your Honor.

DEFENDANT PUENTE-BARBOZA: Yes, sir.

DEFENDANT ESTRADA-CAMPUZANO: Yes.

DEFENDANT REYES-RODRIGUEZ: Yes.

THE INTERPRETER: "Yes" or "yes, I understand" by all.

THE COURT: Now, for you four men, I need to tell you that in my experience, you will be deported and you will be removed from this country after you complete your prison sentence. This means that the guilty plea you intend to offer this morning is going to have a rather negative impact on any desire you have to stay in this country. It's going to have the same negative consequences as it relates to any desire you may have to come back to this country lawfully in the future someday; and it's going to have the same negative consequences as it relates to any paperwork you have on file now or hope

to file in the future in an effort to obtain lawful status in the United States.

Do you men understand the immigration warning I just shared with each of you?  Starting with Mr. Ahumada.

DEFENDANT AHUMADA:  Yes, your Honor.

DEFENDANT PUENTE-BARBOZA:  Yes.

DEFENDANT ESTRADA-CAMPUZANO:  Yes.

DEFENDANT REYES-RODRIGUEZ:  Yes.

THE INTERPRETER:  "Yes, I understand" or "Yes" by all four.

THE COURT:  Now, importantly, in your four cases, has the attorney that represents you in this matter talked with you about the negative consequences or impact of your guilty plea as it relates to any desire you have to stay in this country or ever come back to this country lawfully in the future?  Have you discussed these issues carefully with your lawyer?  Starting with Mr. Ahumada.

DEFENDANT AHUMADA:  Yes, your Honor.

DEFENDANT PUENTE-BARBOZA:  Yes.

DEFENDANT ESTRADA-CAMPUZANO:  Yes.

DEFENDANT REYES-RODRIGUEZ:  Yes.

THE INTERPRETER:  "Yes" by all four.

THE COURT:  Now, the district judge in all seven of your cases in making a determination as to what your sentence is going to be is first going to consult with the

sentencing guidelines. These guidelines provide a framework from then which the judge is to examine your history and your background as well as the nature and circumstances of the offense that you've pled guilty to. When the judge has completed this examination, he arrives at what is called the appropriate sentencing guideline range. This is a range of punishment that the judge should strongly consider in arriving at your sentence. It typically extends from a low number of months in prison to a higher number of months in prison, between which the judge can sentence you and this is presumed to be a reasonable sentence.

But as important as these guidelines are, they are not binding upon the sentencing judge. This is because the judge is obligated to consider and review a number of other factors, as well, meaning you could receive a sentence blow that guideline range, but you could also receive a sentence above it. If the judge were to do either of those two things, he would tell you why he was doing it in court and it would be a function of his obligation to consider and review these other factors.

These factors again include a careful review of your history and your background as well as the nature and circumstances of the offense that you pled guilty to. It includes the seriousness of that offense, the need to

promote respect for the law, the need to protect the public, the need to provide you with a just punishment, the need to deter you from committing criminal offenses like this or others in the future, the need to treat you fairly as compared to a man similarly charged and situated, and lastly, the need to provide you with any job-related training, medical care, or educational opportunities if the judge believed any of that was appropriate in your case.

Now, I've told you about the sentencing guidelines and these other factors so that I could ask you several questions. The first of which is do you understand the important role that the sentencing guidelines will play in arriving at your sentence?

DEFENDANT AHLGREN: I do, your Honor.

DEFENDANT RIOS: Yes, sir.

DEFENDANT DUVALL: I do.

DEFENDANT AHUMADA: I do, your Honor.

DEFENDANT PUENTE-BARBOZA: Yes.

DEFENDANT ESTRADA-CAMPUZANO: Yes.

DEFENDANT REYES-RODRIGUEZ: Yes.

THE INTERPRETER: "Yes" by all three.

THE COURT: But do you understand these guidelines are not binding upon the sentencing judge because that sentencing judge must also review the other

factors that I just went over with you?

DEFENDANT AHLGREN: I do, your Honor.

DEFENDANT RIOS: I do.

DEFENDANT DUVALL: Yes, sir.

DEFENDANT AHUMADA: Yes, your Honor.

DEFENDANT PUENTE-BARBOZA: Yes.

DEFENDANT ESTRADA-CAMPUZANO: Yes.

DEFENDANT REYES-RODRIGUEZ: Yes.

THE INTERPRETER: "Yes" by all three.

THE COURT: Now, as you may recall when we got started a while ago now, I asked each of your lawyers if they had talked with you about the guidelines and these factors and they told me that they had done so and that doesn't surprise me. All seven of you men are represented by a good lawyer and that's what a good lawyer's supposed to do. They're supposed to share with you their wisdom and their experience as it relates to what they believe the judge may or may not do at your sentencing hearing.

Your lawyer's probably attempted to predict that guideline range I spoke of earlier and, again, that's what your lawyer should do. But do you understand that all of that is your lawyer's best guess and estimate, that none of it is binding upon the judge, and the judge will arrive at his own independent conclusion as to what your sentence will be? Do you all seven understand this?

DEFENDANT AHLGREN:  I do, your Honor.

DEFENDANT RIOS:  Yes, sir.

DEFENDANT DUVALL:  Yes, sir.

DEFENDANT AHUMADA:  Yes, your Honor.

DEFENDANT PUENTE-BARBOZA:  Yes.

DEFENDANT ESTRADA-CAMPUZANO:  Yes.

DEFENDANT REYES-RODRIGUEZ:  Yes.

THE INTERPRETER:  "Yes" by all three.

THE COURT:  So here's the difficult position all seven of you are in before you offer your plea.  You simply do not know what your sentence will be.  All you know with certainty is that it will not be greater than the statutory range of punishment I shared with you earlier.

Do you men understand this, as well?

DEFENDANT AHLGREN:  I do, your Honor.

DEFENDANT RIOS:  Yes, sir.

DEFENDANT DUVALL:  I do.

DEFENDANT AHUMADA:  Yes, your Honor.

DEFENDANT PUENTE-BARBOZA:  Yes.

DEFENDANT ESTRADA-CAMPUZANO:  Yes.

DEFENDANT REYES-RODRIGUEZ:  Yes.

THE INTERPRETER:  "Yes" by all three.

THE COURT:  Which one of these fellas had a consecutive sentence?

MR. GARDNER:  I believe that was Mr. Estrada-Campuzano.

THE COURT:  Let me ask all seven of you this first.  Are any of you facing any additional federal, state, or local criminal charges?

DEFENDANT AHLGREN:  I'm not, your Honor.

MR. ALDREDGE:  He's got pending related state charges.

THE COURT:  Okay.  All right.  I'll come back to that, Mr. Rios.

Mr. Duvall?

DEFENDANT DUVALL:  No, sir.

DEFENDANT AHUMADA:  No, your Honor.

DEFENDANT PUENTE-BARBOZA:  No.

THE COURT:  Mr. Estrada, do you have something?

DEFENDANT ESTRADA-CAMPUZANO:  No.

THE INTERPRETER:  "No" by Mr. Estrada and Mr. --

MR. ALDREDGE:  Your Honor, he is --

THE INTERPRETER:  -- by Mr. Ahumada.

MR. ALDREDGE:  -- from Eastern District of Wisconsin where he was given a time-served sentence.

THE COURT:  Okay.

MR. ALDREDGE:  And so, he's got no pending charges.

THE COURT:  So why are we making this consecutive

to a sentence that's been discharged? I, mean, I'm just -- I'm a trained monkey up here. This says consecutive here.

MR. ALDREDGE: Right. I guess that -- so that I could ask for the 48 months be -- the time already served from other charges be credited towards the 48 months.

THE COURT: Gotcha. That makes sense. Okay.

MR. ALDREDGE: That 48 months reflects an adjustment taking into account all the other time that he served.

THE COURT: That makes sense.

And then, Mr. Reyes, are you facing any additional charges?

DEFENDANT REYES-RODRIGUEZ: No.

THE COURT: Mr. Estrada, Mr. Rios, this may or may not apply, but the judge in your case does have the right and the authority to stack any punishment he were to assess on top of, or in addition to, any punishment you may face in relation to any other criminal justice charge that you're facing.

Do you two men understand this? Mr. Rios?

DEFENDANT RIOS: Yes, sir.

THE COURT: Mr. Estrada?

DEFENDANT ESTRADA-CAMPUZANO: Yes.

THE COURT: All right. Returning to all seven of

you, by entering a guilty plea this morning, let's be clear. You'll be waiving and giving up certain valuable rights. These rights include a continuing right to plead not guilty to your charge. You have a right to put the prosecutors over there to their burden of proving beyond a reasonable doubt each and every element of the offense that you've been charged with. They would be required to do this at a jury trial, which means that twelve people from the local community would be selected to sit and listen to the evidence in your case and before you could be found guilty, that jury of twelve must unanimously agree and find that the government had proven the charges against you beyond a reasonable doubt.

During that entire process, your lawyer would continue to represent you and be free to question, cross-examine, test and challenge any evidence that the government might present. Although not required to do so, your lawyer can call witnesses on your behalf and in your defense. Your lawyer actually has the power to subpoena and compel witnesses to do so and one of those witnesses can be you.

You have the right to testify at your own trial, but importantly, you're not required to do that. If you decided not to testify, no one would make you do so. And that jury I spoke of earlier, they would be specifically

instructed by the judge that they could not take into account your decision to remain silent in making their final determination as to whether or not the government had proven these charges against you beyond a reasonable doubt.

Do you men understand or did you understand the important summary of rights that I just gave to you?

DEFENDANT AHLGREN:  I do, your Honor, and I did.

DEFENDANT RIOS:  I do.

DEFENDANT DUVALL:  Yes, sir.

DEFENDANT AHUMADA:  Yes, your Honor.

DEFENDANT PUENTE-BARBOZA:  Yes.

DEFENDANT ESTRADA-CAMPUZANO:  Yes.

DEFENDANT REYES-RODRIGUEZ:  Yes.

THE INTERPRETER:  "Yes" or "Yes, I understand" by all three.

THE COURT:  Understanding these rights and the fact you'd be waiving and giving them up by entering a guilty plea here this morning, is it still your desire to proceed with your plea?

DEFENDANT AHLGREN:  It is, your Honor.

DEFENDANT RIOS:  Yes, sir.

DEFENDANT DUVALL:  Yes, sir.

DEFENDANT AHUMADA:  Yes, your Honor.

DEFENDANT PUENTE-BARBOZA:  Yes.

DEFENDANT ESTRADA-CAMPUZANO:  Yes.

DEFENDANT REYES-RODRIGUEZ:  Yes.

THE INTERPRETER:  "Yes" by all three.

THE COURT:  All right, gentlemen.  Recalling and understanding the charge that you face in your case, I essentially read them to you earlier, recalling the statutory punishment range that you face in relation to your charge, and understanding the number of important rights that you have, but rights that you'll be giving up, by entering a plea this morning, how do you plead in your case?  Do you plead guilty or not guilty?

DEFENDANT AHLGREN:  I plead guilty, your Honor.

DEFENDANT RIOS:  I plead guilty.

DEFENDANT DUVALL:  Guilty.

DEFENDANT AHUMADA:  Guilty, your Honor.

DEFENDANT PUENTE-BARBOZA:  Guilty.

DEFENDANT ESTRADA-CAMPUZANO:  Guilty.

DEFENDANT REYES-RODRIGUEZ:  Guilty.

THE INTERPRETER:  "Guilty" by all three.

THE COURT:  Are you pleading guilty freely and voluntarily?

DEFENDANT AHLGREN:  I am, your Honor.

DEFENDANT RIOS:  Yes, sir.

DEFENDANT DUVALL:  Yes, your Honor.

DEFENDANT AHUMADA:  Yes, your Honor.

DEFENDANT PUENTE-BARBOZA:  Yes.

DEFENDANT ESTRADA-CAMPUZANO:  Yes.

DEFENDANT REYES-RODRIGUEZ:  Yes.

THE INTERPRETER:  "Yes" by all three.

THE COURT:  Other than the benefits that may be set out in plea agreements, have any of you been promised any other benefits in exchange for your guilty plea this morning?

DEFENDANT AHLGREN:  I have not, your Honor.

DEFENDANT RIOS:  No, sir.

DEFENDANT DUVALL:  I haven't.

DEFENDANT AHUMADA:  No, your Honor.

DEFENDANT PUENTE-BARBOZA:  No.

DEFENDANT ESTRADA-CAMPUZANO:  No.

DEFENDANT REYES-RODRIGUEZ:  No.

THE INTERPRETER:  "No" by all three.

THE COURT:  Has anyone promised or guaranteed in advance what your eventual sentence will be in exchange for your guilty plea?

DEFENDANT AHLGREN:  No, your Honor.

DEFENDANT RIOS:  No, sir.

DEFENDANT DUVALL:  No, sir.

DEFENDANT AHUMADA:  No, your Honor.

DEFENDANT PUENTE-BARBOZA:  No.

DEFENDANT ESTRADA-CAMPUZANO:  No.

DEFENDANT REYES-RODRIGUEZ:  No.

THE INTERPRETER:  "No" by all three.

THE COURT:  Reminding you that you're under oath, are you telling me that you're pleading guilty to your charge because you're guilty of it and for no other reason?

DEFENDANT AHLGREN:  I am, your Honor.

DEFENDANT RIOS:  Yes, sir.

DEFENDANT DUVALL:  Yes, your Honor.

DEFENDANT AHUMADA:  Yes, your Honor.

DEFENDANT PUENTE-BARBOZA:  Yes.

DEFENDANT ESTRADA-CAMPUZANO:  Yes.

DEFENDANT REYES-RODRIGUEZ:  Yes.

THE INTERPRETER:  "Yes" by all three.

THE COURT:  All right, gentlemen.  We're almost done.  I have a final obligation to find that there's a factual basis or an independent reason to believe that you did commit the offense to which you've just pled guilty.

Now, in this regard for the five you with plea agreements, Messrs. Ahlgren, Rios, Duvall, Estrada and Reyes-Rodriguez, contained within your plea agreements is a recitation or summary of the facts the government believes they would have proven if called upon to do so at a trial in your case.  Recalling those facts and reminding you that you're under oath, are the facts set out within

your plea agreement as it relates to your conduct, are those facts true?

DEFENDANT AHLGREN: They are, your Honor.

DEFENDANT RIOS: Yes, sir.

DEFENDANT DUVALL: They are.

DEFENDANT ESTRADA-CAMPUZANO: Yes.

DEFENDANT REYES-RODRIGUEZ: Yes.

THE INTERPRETER: "Yes" by both.

THE COURT: To the extent those written facts described your behavior and what you did wrong in your case, are those facts true?

DEFENDANT AHLGREN: They are, your Honor.

DEFENDANT RIOS: Yes, sir.

DEFENDANT DUVALL: Yes.

DEFENDANT ESTRADA-CAMPUZANO: Yes.

DEFENDANT REYES-RODRIGUEZ: Owe.

THE INTERPRETER: "Yes" by both.

THE COURT: All right. Thank you for those five of you.

For Messrs. Ahumada and Puente, starting with you two men, I'd like you to listen carefully as the prosecutor summarizes the evidence he believes the government would have presented in your case.

MR. GARDNER: Thank you, your Honor.

Your Honor, each of these gentlemen were found

within the Western District of Texas: With Mr. Ahumada, that occurred on August 9th, 2024; and for Mr. Puente-Barboza that occurred on June 28th, 2024. Officials with Immigration and Customs Enforcement compared their fingerprints with an alien file and other documents maintained by the government and determined that each one of these gentlemen had been denied admission, excluded, deported and removed from the United States at some point. For Mr. Ahumada, that occurred on March 4th, 2020 from the United States to the Republic of Mexico. And for Mr. Puente-Barboza, that occurred on March 6, 2023, also from the United States to the Republic of Mexico.

Neither one of these gentlemen had obtained consent to reapply for admission from the Attorney General of the United States or successor, Secretary for Homeland Security, to reapply for admission. In summary, your Honor, that would be the facts the government would have presented had it been called upon to do so.

THE COURT: Mr. Ahumada, and, Mr. Puente, did you all understand that summary?

DEFENDANT AHUMADA: Yes, your Honor.

DEFENDANT PUENTE-BARBOZA: Yes.

THE COURT: To the extent that summary described your behavior and what you did wrong in your case, were

those facts true?

DEFENDANT AHUMADA: Yes, your Honor.

DEFENDANT PUENTE-BARBOZA: Yes.

THE COURT: Okay. All right. For all seven of you, I'm going to find that the guilty pleas you've offered this morning have been freely and voluntarily made, that you understand the charge to which you have pled. I'm also going to find that you understand the statutory range of punishment you face in relation to your charge, that you understand the number of important rights that you have, but rights that you have given up, by entering a plea. I'm also going to find that you're competent to enter your plea this morning and that you are satisfied with the work your lawyer has done for you in your case.

For the five of you with plea agreements, I'm going to find that before you signed your plea agreement, you read it or somebody read it to you in a language that you understand, that you reviewed it carefully with your lawyer. Your lawyer was able to answer any questions that you had about that plea agreement. As a consequence, you understand your plea agreement and you agree to follow it and be bound by it in the future.

And then, lastly, in all seven of your cases, I am going to find that there's a factual basis or an

independent reason to believe that you are guilty of the offense to which you have pled.  That's based upon the detailed written facts set out within the five of you who have plea agreements and the oral summary that was provided a moment ago by the prosecutor in the case of those two of you who don't have plea agreements, which absent an objection from any of you men or your respective lawyers, I intend to adopt those summaries for purposes of this hearing.  But it's also based upon your sworn testimony here just a -- before me a moment ago that those detailed written facts as applied to you are true.

Having said all of this, your case will now be referred to the probation office for the preparation of a presentence report.  A written draft of that report will be shared with you well before your sentencing hearing. Importantly, you'll have 14 days after receiving a copy of this draft report to make any objections to it.

From that point until your eventual sentencing hearing, your attorney will continue to work with the people in the probation office to resolve any objections that you may have had to that draft report.  Any objections that cannot be resolved to your satisfaction before the final report is prepared and your day of sentencing arrives, those continuing objections will be resolved by the district judge at the time of your

sentencing hearing.

That's a brief description of what's going to be happening at least here within this courthouse between now and your sentencing date and it brings our discussion this morning to an end. Do any of you men have any questions for me about any of the important issues we've talked about or any questions about what's going to be happening next in your case?

DEFENDANT AHLGREN: I do not, your Honor.

DEFENDANT RIOS: No, sir.

DEFENDANT DUVALL: I don't.

DEFENDANT AHUMADA: No, your Honor.

DEFENDANT PUENTE-BARBOZA: No.

DEFENDANT ESTRADA-CAMPUZANO: No.

DEFENDANT REYES-RODRIGUEZ: No.

THE INTERPRETER: "No" by all three.

THE COURT: All right, gentlemen. Thanks for your patience this morning and, otherwise, good luck to you.

(Proceedings conclude at 10:43 a.m.)

REPORTER'S CERTIFICATE

I, LILY I. REZNIK, DO HEREBY CERTIFY THAT THE FOREGOING WAS TRANSCRIBED FROM AN ELECTRONIC RECORDING MADE AT THE TIME OF THE AFORESAID PROCEEDINGS AND IS A CORRECT TRANSCRIPT, TO THE BEST OF MY ABILITY, MADE FROM THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER, AND THAT THE TRANSCRIPT FEES AND FORMAT COMPLY WITH THOSE PRESCRIBED BY THE COURT AND JUDICIAL CONFERENCE OF THE UNITED STATES, ON THIS 15 DAY OF SEPTEMBER, 2024.

*Lily Iva Reznik*

~~~~~~~~~~~~~~~~~~~~~~~~
*LILY I. REZNIK, CRR, RMR*
*Official Court Reporter*
*United States District Court*
*Austin Division*
*501 West 5th Street, Suite 4153*
*Austin, Texas 78701*
*(512)391-8792*
*SOT Certification No. 4481*
*Expires: 1-31-25*